UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 6:13-CR-20-GFVT-HAI-23 |
| v. | ) | |
| | ) | RECOMMENDED DISPOSITION |
| WILLIAM HELBIG, Jr., | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The Court, on referral (D.E. 1170), considers reported supervised release violations by Defendant William Helbig, Jr. District Judge Van Tatenhove entered a judgment against Defendant on July 17, 2014, following his guilty plea to conspiring to manufacture 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a lesser included offense. D.E. 708. Defendant was originally sentenced to 87 months of imprisonment and a four-year term of supervised release. *Id.* On August 17, 2015, Defendant's sentence was reduced to 70 months of imprisonment. D.E. 973. Defendant began his supervised release term on August 28, 2017. The United States Probation Office ("USPO") for the Eastern District of Kentucky accepted responsibility of Defendant's supervision on November 7, 2017, after he moved to the district from the Cleveland, Ohio area.

I.

On April 30, 2018, the USPO issued a Supervised Release Violation Report ("the Report") charging Defendant with four violations. The USPO then secured a warrant from District Judge Van Tatenhove on May 2, 2018. D.E. 1171.

The Report alleges that, on April 13, 2018, U.S. Probation Officer Scott Greiwe contacted Defendant at his residence in order to obtain a urine specimen for drug testing. Defendant provided a specimen that appeared to test positively for the presence of buprenorphine via instant testing device. Defendant initially denied the use of any controlled substances, and the specimen was sent to Alere Toxicology Services, Inc., for confirmation. However, before Officer Greiwe left Defendant's residence, Defendant advised that he had been using buprenorphine, and he signed an admission form acknowledging the same. During further questioning, Defendant indicated to Officer Greiwe that he had been using buprenorphine during his incarceration and throughout his term of supervision. Officer Greiwe told Defendant to report to the probation office on April 23, 2018, to discuss the matter further.

Helbig reported to the probation office on the day he had been directed, and he was instructed to have a seat in the lobby while Officer Greiwe completed tasks for other clients. When Officer Greiwe returned to the lobby to speak with Defendant, he discovered that Defendant had left the office. At approximately 1:55 p.m., Cindy Hambrick, who was Defendant's girlfriend with whom he had been residing, left a voice message indicating that Defendant had left her home because he was going to get "locked up." On that same day, Alere Toxicology Services reported positive test results for buprenorphine for the specimen that had been obtained from Defendant on April 13, 2018.

Two days later, Officer Greiwe also obtained Defendant's cellular phone from Hambrick, who advised that he had left the phone at her residence. The phone had the same number that Defendant had reported as his primary contact number. A search of the phone revealed text messages that Defendant had sent to Hambrick that said, "I left cindy I ran out on them," and "I'm leaving this phone at your house." The texts were both sent around 9:56 a.m. on April 23, 2018.

2

Citing this conduct by Defendant, the Report alleges that Defendant violated four conditions of his supervised release. First, the Report alleges that, based on the urine specimen that tested positive for the presence of buprenorphine and Defendant's acknowledgment form, Defendant violated the condition that he "shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician."

Second, the Report alleges that, based on the United States Court of Appeals for the Sixth Circuit's ruling that use of a controlled substance is equivalent to possession, Defendant violated the condition that he "shall not commit another federal, state, or local crime." Given Defendant's criminal history, this conduct would be a felony violation of 21 U.S.C. § 844(a) and a Grade B violation under the Guidelines.

Third, the Report alleges that, based on his leaving the probation office lobby on April 23, 2018, Defendant violated the condition that he "shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer."

Finally, the Report alleges that, because his whereabouts were unknown to the probation office and because he had not lived at his reported address since April 23, 2018, Defendant violated the condition that he "shall notify the probation officer at least ten days prior to any change in residence or employment."

II.

The Court conducted an initial appearance pursuant to Federal Rule of Criminal Procedure 32.1 on September 26, 2018. D.E. 1201. During the hearing, Defendant made a knowing, voluntary, and intelligent waiver of his right to a preliminary hearing. *Id.* At that time, the United

States made an oral motion for detention; Defendant did not argue for release. *Id.* Based on the heavy defense burden under 18 U.S.C. § 3143(a), the Court found detention was required. *Id.*

At the final hearing on October 9, 2018, Defendant was afforded all rights under Rule 32.1 and 18 U.S.C. § 3583. D.E. 1205. Defendant waived a formal hearing and stipulated to the violations set forth in the Report. *Id.* The Court found Defendant to be competent to stipulate to the violations and that the stipulation was knowingly, voluntarily, and intelligently made. *Id.* The Court also found the stipulation to be consistent with the advice of Defendant's counsel. *Id.*

The Court must find "by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3); *see also United States v. Cofield*, 233 F.3d 405, 406 (6th Cir. 2000) ("In order to revoke supervised release, the sentencing court must find by a preponderance of the evidence that a defendant has violated a condition of his supervised release."). Defendant's stipulation permits the Court to find that he engaged in conduct that, at worse, is a Grade B violation under the Guidelines. *See* U.S.S.G. § 7B1.1.

During the final hearing, the parties made a joint sentencing recommendation to the Court of revocation with twelve months of imprisonment to be followed by three years of supervised release.

III.

The Court has reviewed the entire record, including the Supervised Release Violation Report and accompanying documents, the underlying judgment in this matter, and Defendant's presentence investigative report and sentencing materials. The Court has also considered all of the 18 U.S.C. § 3553(a) factors imported into the 18 U.S.C. § 3583(e) analysis. Through that consideration, the Court will recommend, in line with the parties' joint recommendation, that Defendant's supervised release be revoked and that he be sentenced to twelve months of

imprisonment to be followed by three years of supervised release. The Court will also recommend mental-health treatment for Defendant, as needed, during any term of imprisonment and upon his return to supervised release.

Under 18 U.S.C. § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant's conviction pursuant to 21 U.S.C. § 846 for conspiring to manufacture 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine is a Class B felony. *See* 21 U.S.C. §§ 841(b)(1)(B), 846. For a Class B felony, the maximum revocation sentence provided under 18 U.S.C. § 3583 is three years of imprisonment. *See* 18 U.S.C. § 3583(e)(3). The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on Defendant's criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, U.S.S.G. § 7B1.4, such statements 'are merely advisory' and need only be considered by the district court before sentence is imposed.").

Under U.S.S.G. § 7B1.1, Defendant's admitted conduct qualifies as a Grade B violation with respect to the second violation, and a Grade C violation with respect to the first, third, and fourth violations. Given Defendant's criminal history category of III (the category at the time of the conviction in this District) and a Grade B violation, Defendant's range, under the Revocation Table of Chapter 7, is 8–14 months. *See* U.S.S.G. § 7B1.1(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade."). Both parties agreed to this calculation of the range.

Congress does **mandate** revocation in a case of this nature.  By statute, the Court must revoke Defendant's release because he possessed a controlled substance.  *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession).  The Sixth Circuit clearly and repeatedly has equated drug use with drug possession, and Defendant's admitted use in this context undoubtedly results in application of 18 U.S.C. § 3583(g)(1).  *See United States v. Hancox*, 49 F.3d 223, 224 (6th Cir. 1995); *see also United States v. Metcalf*, 292 F. App'x 447, 449 n.2 (6th Cir. 2008) ("Mandatory revocation was . . . warranted under § 3583(g)(1), as we have held that use of a controlled substance constitutes possession under that subsection.").  The only exception would be if a suitable treatment option, or Defendant's record of involvement in treatment, warranted relief.  *See* 18 U.S.C. § 3583(d); *Crace*, 207 F.3d at 835 (holding district court "required by 18 U.S.C. § 3583(g) to revoke the defendant's term of supervised release upon the defendant's positive drug test and admission of the use of a controlled substance unless defendant could come under the exception in 18 U.S.C. § 3583(d)").  Nothing in the record supports application of the exception.

The Court's consideration of all the statutory factors informs its recommendation of revocation with twelve months of imprisonment to be followed by three years of supervised release.  *See* 18 U.S.C. §§ 3553(a), 3583(e).  First, concerning the nature and circumstances of the underlying offense, Defendant was involved in a conspiracy to manufacture 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine.  By continuing to unlawfully use drugs, Defendant places himself at risk for returning to the behavior that led to his underlying conviction.

The Court next considers Defendant's history and characteristics.  Here, the Court notes that it agrees with the government's characterization at the final hearing of Defendant's behavior.

6

On the one hand, by being honest with his probation officer and admitting that he had taken buprenorphine and by following the officer's direction to appear at the probation office, Defendant exhibited behavior that the Court wants to see in individuals who are on supervised release. On the other hand, by refusing to follow his probation officer's directions and absconding, Defendant exhibited the type of behavior that the Court does not want to see in its supervisees.

At the final hearing, Defendant explained how he was scared to return to prison and how his anxiety led him to run. He also described the positive effects that his completion of the Residential Drug Abuse Program ("RDAP") while previously incarcerated has had on his life. Defendant stated that RDAP "gave [him his] life back." He also said that he had finished fifth in his class during RDAP, and that he has learned to think about the effects that drug use and trafficking has on his family, particularly on his kids, and his neighbors. The Court commends Defendant for his completion of the RDAP program. Further, Defendant's recognition of the dangers drug use and trafficking creates for the community demonstrates an acceptance of responsibility for his actions. However, Defendant is still flirting with drug use in a way that gives the Court great concern, particularly by using medication without proper authorization.

The Court next considers the need to deter criminal conduct, both for Defendant and for society. Similarly, the Court must consider the need to protect the public from further crimes. Here, Defendant said that he used buprenorphine to prevent himself from using more serious drugs. But any misuse of a drug is dangerous conduct, especially given the potential for abuse.

The Court must also consider the need to provide Defendant with any needed education, training, or treatment. At the final hearing, Defendant and his counsel discussed the mental-health issues that affect Defendant.[1] Defendant stated that he suffers from anxiety, and he became

---

[1] The parties acknowledged, and the Court found, that Defendant's issues did not affect his competency. *See* D.E. 1205.

7

emotional during the hearing. To address these concerns, the Court will recommend that Defendant participate in a mental-health evaluation and follow any necessary treatment that may be recommended while he is in prison. The Court will also recommend that he attend and complete any mental-health diagnostic evaluations and treatment or counseling programs that his probation officer may direct when he is back on supervised release.

The requirement that the Court seek to avoid unwarranted sentencing disparities among defendants with similar records who are found guilty of similar conduct is addressed by a recommended sentence within the Guidelines range. In this case, Defendant's guideline range is eight to fourteen months, and the recommended sentence of twelve months falls squarely within that range. The need to provide restitution plays no role in this case.

Additionally, the Court must consider whether it should impose an additional term of supervised release. Under 21 U.S.C. § 841(b)(1)(B), there is no maximum amount of supervised release that can be reimposed. *See* 21 U.S.C. § 841(b)(1)(B). However, having considered all of the factors, the Court will recommend that three years of supervised release be imposed upon Defendant following imprisonment. This amount of time gives Defendant credit for the time he has already spent on supervision, which is about eight months.

Finally, the Guidelines suggest that the ***primary*** wrong in the supervised release context is violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* U.S.S.G. Chp. 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). Defendant's initial sentence was at the bottom end of the Guidelines range, and he later received the benefit of a subsequent reduction in his sentence. Thus, the Court had placed a substantial amount of trust in him. By

using drugs without approval, disregarding the direction of his probation officer, and absconding, Defendant has violated that trust.  This abuse of the Court's trust supports the recommended sentence in this case.

V.

Based on Defendant's admitted conduct, and in consideration of the factors discussed above, the Court **RECOMMENDS**:

(1) That Defendant be found guilty of the violations;

(2) Revocation and imprisonment for a term of twelve months based on the violations found, including a recommendation to the Bureau of Prisons that he receive mental-health treatment while incarcerated; and

(3) Three years of supervised release under the conditions contained in Defendant's original judgment (D.E. 708), with the added condition that, while on supervised release, Defendant must attend and successfully complete any mental-health diagnostic evaluations and treatment or counseling programs as directed by the probation officer, and that he must pay for the cost of treatment services to the extent he is able as determined by the probation officer.

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. D.E. 1205.  Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on District Judge Van Tatenhove's docket upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute.  *See also* 18 U.S.C. § 3401(i).  As defined by § 636(b)(1), within fourteen days after being served with a copy of this recommended

9

decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court.  Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals.  *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

This the 12th day of October, 2018.

Signed By:

*Hanly A. Ingram*

**United States Magistrate Judge**