UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 6:13-CR-20-GFVT-HAI-23 |
| v. ) | |
| ) | RECOMMENDED DISPOSITION |
| WILLIAM HELBIG, Jr., ) | |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The Court, on referral (D.E. 1453), considers reported supervised release violations by Defendant William Helbig, Jr.  District Judge Van Tatenhove entered a judgment against Defendant on July 17, 2014, following his guilty plea to conspiring to manufacture 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a lesser included offense.  D.E. 708.  Defendant was originally sentenced to 87 months of imprisonment and a four-year term of supervised release.  *Id.*  On August 17, 2015, Defendant's sentence was reduced to 70 months of imprisonment.  D.E. 973.  Defendant began his supervised release term on August 28, 2017, in Cleveland, Ohio.  The United States Probation Office ("USPO") for the Eastern District of Kentucky accepted responsibility of Defendant's supervision on November 7, 2017, after he moved to the district.

On January 11, 2019, Defendant's supervised release was revoked after he admitted to the use of a controlled substance (buprenorphine) and resulting commission of a federal crime, failure to answer truthfully all inquiries by the probation officer, and failure to notify the probation officer of any changes to his address.  D.E. 1235.  He was sentenced to twelve months of imprisonment,

followed by thirty-six months of supervised release. D.E. 1238. Defendant was released on September 24, 2019, to begin his second term of supervised release.

On February 2, 2021, a Report on Offender Under Supervision was submitted to the Court stating that on January 29, 2021, Defendant admitted to using methamphetamine. D.E. 1448. The report recommended that no action be taken to allow Defendant to enroll in mental health and substance abuse treatment at the direction of the probation officer, per the conditions of his release. *Id.* Judge Van Tatenhove approved the request. *Id.*

## I.

On May 21, 2021, the United States Probation Office ("USPO") issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report charges Defendant with four violations. Violation #1 alleges Defendant violated the condition that requires him to notify the probation officer at least 10 days before any change in his living arrangements. According to the Report,

> On May 18, 2021, this officer traveled to Helbig's reported address and made contact with the homeowner who stated Helbig has not been seen at the residence since approximately May 10, 2021. The homeowner further stated there had been disagreements with Helbig and he would not be permitted to remain at the residence.
>
> On May 19, 2021, Helbig reported to the probation office as directed. During the office visit, upon questioning, he stated his possessions were still at the reported address and he stayed there occasionally but had frequently stayed other places as well.

This is a Grade C violation.

Violation #2 alleges Defendant violated the condition that requires him to refrain from any unlawful use of a controlled substance. According to the Report, on May 19, 2021, Defendant submitted a urine sample that tested positive for methamphetamine and marijuana. Defendant

2

signed an admission form acknowledging the use of both controlled substances. This is a Grade C violation.

In relation to Defendant's admitted marijuana and methamphetamine use, Violations #3 and #4 charge Defendant with violating the conditions that he must not unlawfully possess a controlled substance and that he must not commit another federal, state, or local crime. Noting the Sixth Circuit's decision that use of a controlled substance includes possession, Violations #3 and #4 charge Defendant with conduct that would be federal crimes, which are possession of marijuana and methamphetamine, Class E felonies pursuant to 21 U.S.C. § 844(a). These are Grade B violations.

The Court conducted an initial appearance pursuant to Federal Rule of Criminal Procedure 32.1 on August 12, 2021. D.E. 1466. During the hearing, Defendant made a knowing, voluntary, and intelligent waiver of his right to a preliminary hearing. *Id.* At that time, the United States made an oral motion for detention; Defendant did not argue for release. *Id.* Based on the heavy defense burden under 18 U.S.C. § 3143(a), the Court found detention was required. *Id.*

At the final hearing on August 17, 2021, Defendant was afforded all rights under Rule 32.1 and 18 U.S.C. § 3583. D.E. 1469. Defendant waived a formal hearing and stipulated to Violations #2, #3, and #4 as set forth in the Report. *Id.* The United States made an oral motion to dismiss Violation #1. The Court found Defendant to be competent to stipulate to Violations #2, #3, and #4 and that the stipulation was knowingly, voluntarily, and intelligently made. *Id.* The Court also found the stipulation to be consistent with the advice of Defendant's counsel. *Id.*

The Court must find "by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3); *see also United States v. Cofield*, 233 F.3d 405, 406 (6th Cir. 2000) ("In order to revoke supervised release, the sentencing court must

find by a preponderance of the evidence that a defendant has violated a condition of his supervised release."). Defendant's stipulation permits the Court to find that he engaged in conduct that, at worst, is a Grade B violation under the Guidelines. *See* U.S.S.G. § 7B1.1.

During the final hearing, the parties made a joint sentencing recommendation of revocation with fourteen months of imprisonment with no supervised release to follow. The government focused on the nature and circumstances of the original offense, Defendant's history and characteristics, and the breach of the Court's trust. The government argued that there is a close tether between the current violations and Defendant's original conviction for participating in a conspiracy to manufacture methamphetamine. The government stated that Defendant received methamphetamine for his participation in the conspiracy, and he creates a risk for similar criminal conduct each time he uses controlled substances. The government argued that there is also a need to protect the public and deter future criminal conduct on this basis.

As to Defendant's history and characteristics and the breach of the Court's trust, the government stated that the current violations include mitigating and aggravating factors. As mitigating, the government noted that Defendant did not abscond and admitted to using methamphetamine and marijuana. On the other hand, the government stated that Defendant's first revocation stemmed from his suboxone use. At that time, Defendant stated that he used suboxone to prevent himself from using more serious drugs like methamphetamine. Now, the government argued, Defendant's drug use has escalated. The government also noted that the current violations occurred just a few months after the Court approved taking no action on Defendant's second set of violations. Moreover, the basis for that approval was to allow Defendant to enroll in mental health and substance abuse treatment. However, Defendant never attended treatment prior to the current violations.

Defense counsel agreed that Defendant admissions to his methamphetamine and marijuana use are mitigating factors. Defense counsel also stated that further supervision will not be effective and that Defendant cannot currently overcome his addiction.

Defendant addressed the Court and stated that he agreed that the recommended sentence is appropriate. Defendant stated that he has had trouble finding employment due to his conviction and plans to move to Ohio or Georgia once he completes his sentence. Defendant also admitted that the RDAP program during his initial term of imprisonment helped him handle his addiction. However, Defendant stated that he does not know why the lessons from the program did not make a permanent impact.

## II.

Under 18 U.S.C. § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant's conviction pursuant to 21 U.S.C. § 846 for conspiring to manufacture 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine is a Class B felony. *See* 21 U.S.C. §§ 841(b)(1)(B), 846. For a Class B felony, the maximum revocation sentence provided under 18 U.S.C. § 3583 is three years of imprisonment. *See* 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on Defendant's criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, U.S.S.G. § 7B1.4, such statements 'are merely advisory' and need only be considered by the district court before sentence is imposed.").

Under U.S.S.G. § 7B1.1, Defendant's admitted conduct qualifies as a Grade B violation with respect to Violations #3 and #4, and a Grade C violation with respect to Violation #2. Given Defendant's criminal history category of III (the category at the time of the conviction in this District) and a Grade B violation, Defendant's range, under the Revocation Table of Chapter 7, is 8–14 months. *See* U.S.S.G. § 7B1.1(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade."). Both parties agreed to this calculation of the range.

A Court may also re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). Defendant's original conviction carries no maximum term of supervised release. 21 U.S.C. § 841(b)(1)(B). However, the parties recommended no additional supervision.

Congress does ***mandate*** revocation in a case of this nature. By statute, the Court must revoke Defendant's release because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession). The Sixth Circuit clearly and repeatedly has equated drug use with drug possession, and Defendant's admitted use in this context undoubtedly results in application of 18 U.S.C. § 3583(g)(1). *See United States v. Hancox*, 49 F.3d 223, 224 (6th Cir. 1995); *see also United States v. Metcalf*, 292 F. App'x 447, 449 n.2 (6th Cir. 2008) ("Mandatory revocation was . . . warranted under § 3583(g)(1), as we have held that use of a controlled substance constitutes possession under that subsection."). The only exception would be if a suitable treatment option, or Defendant's record of involvement in treatment, warranted relief. *See* 18 U.S.C. § 3583(d); *Crace*, 207 F.3d at 835 (holding district court "required by 18 U.S.C. § 3583(g) to revoke the defendant's term of

6

supervised release upon the defendant's positive drug test and admission of the use of a controlled substance unless defendant could come under the exception in 18 U.S.C. § 3583(d)"). Nothing in the record supports application of the exception.

### III.

The Court has reviewed the entire record, including the Supervised Release Violation Report and accompanying documents, the underlying judgment in this matter, and Defendant's presentence investigative report and sentencing materials. The Court has also considered all of the 18 U.S.C. § 3553(a) factors imported into the 18 U.S.C. § 3583(e) analysis. Through that consideration, the Court will recommend, in line with the parties' joint recommendation, that Defendant's supervised release be revoked and that he be sentenced to fourteen months of imprisonment with no supervised release to follow.

First, concerning the nature and circumstances of the underlying offense, Defendant was involved in a conspiracy to manufacture 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine. By continuing to unlawfully use drugs, Defendant places himself at risk for returning to the behavior that led to his underlying conviction. This risk also creates a need to protect the public and deter any future criminal conduct.

The Court next considers Defendant's history and characteristics. While Defendant was honest about his drug use leading to the current violations, the type of drugs used and the nature of that use are aggravating factors. Defendant's first set of violations stemmed from Defendant's unauthorized use of suboxone to prevent him from using methamphetamine. Since then, Defendant has violated by using methamphetamine twice and the current violations include marijuana use.

The Court must also consider the need to provide Defendant with any needed education, training, or treatment. Defendant still needs mental health and substance abuse treatment to overcome his addiction and learn how to make better decisions. However, the Court has provided every opportunity it can to allow Defendant access to the appropriate aids, but with no success. The Court's resources are better focused elsewhere, and thus, further ordered treatment is not appropriate in this case. However, the Court encourages Defendant to seek treatment for his mental health and substance abuse on his own and to undertake meaningful self-reflection in order to make lasting, positive changes in his life.

The Guidelines suggest that the *primary* wrong in the supervised release context is violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* U.S.S.G. Chp. 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). Defendant's initial sentence was at the bottom end of the Guidelines Range, and he later received the benefit of a subsequent reduction in his sentence. Judge Van Tatenhove's approval of no action being taken in response to the second set of reported violations was met with Defendant swiftly violating the conditions of release a third time. Thus, the Court has placed a substantial amount of trust in Defendant that has been repeatedly breached. This abuse of the Court's trust supports a sentence of incarceration at the top of the Guidelines Range.

The requirement that the Court seek to avoid unwarranted sentencing disparities among defendants with similar records who are found guilty of similar conduct is addressed by a recommended sentence within the Guidelines range. Here, the Court recommends a sentence of incarceration of fourteen months.

Additionally, the Court must consider whether it should impose an additional term of supervised release. Under 21 U.S.C. § 841(b)(1)(B), there is no maximum amount of supervised release that can be reimposed. *See* 21 U.S.C. § 841(b)(1)(B). However, no additional term of supervised release is recommended. Defendant has been given every opportunity to comply with the conditions of release and has repeatedly breached the trust instilled in him by the Court. Thus, the Court cannot justify continuing to expend the USPO's resources on an individual that refuses to take advantage of them.

**IV.**

Based on Defendant's admitted conduct, and in consideration of the factors discussed above, the Court **RECOMMENDS**:

(1) That Defendant be found guilty of Violations #2, #3, and #4;

(2) The government's motion to dismiss Violation #1 be granted;

(3) Revocation and imprisonment for a term of fourteen months; and

(4) No term of supervised release to follow.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on District Judge Van Tatenhove's docket upon submission. If Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 20th day of August, 2021.

Signed By:
Hanly A. Ingram
United States Magistrate Judge